730 P.2d 497

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Michael C. GATTIS, Defendant-Appellant.**

**No. 9176.**

Court of Appeals of New Mexico.

Nov. 26, 1986.

Thomas A. Harden, Dan B. Buzzard, Clovis, Winston Roberts-Hohl, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

Defendant appeals his conviction on three counts of use of telephone to harass, annoy or offend, contrary to NMSA 1978, Section 30-20-12 (Repl.Pamp.1984). After a jury trial, defendant was sentenced to eighteen months on each count, to run concurrently. The sentences were suspended and defendant was placed on probation for eighteen months on each count, to run concurrently.

Defendant lists four issues on appeal: (1) whether Section 30-20-12(A) is overbroad; (2) whether that subsection, reasonably interpreted, prohibits conduct which is constitutionally protected; (3) whether that subsection is too vague and indefinite; and (4) whether there was a failure of proof under the circumstances of this case. Issues one and two are the same and, thus, will be discussed together. One other issue listed in the docketing statement, but not briefed, is deemed abandoned. *State v. Fish*, 102 N.M. 775, 701 P.2d 374 (Ct.App.1985). We affirm.

## BACKGROUND

Defendant was indicted on six counts—two counts of threatening a witness, contrary to NMSA 1978, Section 30-24-3

(Repl.Pamp.1984), and four counts of misuse of telephone, contrary to Section 30–20–12. A jury found him guilty of three counts of misuse of telephone and acquitted him of the other charges. The convictions resulted from a telephone call defendant made to Anita A. on March 23, 1985, and three telephone calls to Vickie L., two on April 12, 1985, and one on May 3, 1985.

Both of the victims had had intimate relationships with defendant. Anita testified that her affair with defendant ended in 1978. In 1984, she sent a certified letter to defendant asking him not to call her anymore. Vickie had lived with defendant at two different times. Testimony indicates this relationship ended in December 1984. The relevant telephone calls from defendant were traced and recorded. At the time the telephone calls were made, both women were married to other men.

## 1. Whether Section 30–20–12 is Unconstitutionally Overbroad or Vague, or Both

Section 30–20–12(A) states:

*It shall be unlawful for any person,* with intent to terrify, intimidate, threaten, harass, annoy or offend, to telephone another and use any obscene, lewd or profane language or suggest any lewd, criminal or lascivious act, or threaten to inflict injury or physical harm to the person or property of any person. It shall also be unlawful for any person to attempt by telephone to extort money or other thing of value from any other person, or to otherwise disturb by repeated anonymous telephone calls the peace, quiet or right of privacy of any other person at the place where the telephone call or calls were received, or *to maliciously make a telephone call, whether or not conversation ensues, with intent to annoy or disturb another,* or to disrupt the telecommunications of another. [Emphasis added.]

The jury was only instructed on the underscored alternative, and that is the only alternative applicable to this case.

Challenges of overbreadth and vagueness are frequently brought together and many of the cases dealing with the constitutionality of statutes similar to Section 30–20–12 address both issues. Nevertheless, they are distinct concepts.

A statute is unconstitutionally overbroad, and thus offends the first amendment, if it not only forbids conduct constitutionally subject to proscription but also sweeps within its ambit those actions ordinarily deemed to be constitutionally protected. *State v. Jaeger,* 249 N.W.2d 688 (Iowa 1977). *See State ex rel. Gonzales v. Manzagol,* 87 N.M. 230, 531 P.2d 1203 (1975). A statute is unconstitutionally vague, and thus offends due process, if it does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so he may act accordingly. *State v. Jaeger. See State v. Segotta,* 100 N.M. 498, 672 P.2d 1129 (1983). A statute must give fair warning of proscribed conduct in order to avoid arbitrary and discriminatory enforcement. *State v. Jaeger,* citing *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Statutes are to be construed, if possible, so that they will be constitutional. *State v. Wade,* 100 N.M. 152, 667 P.2d 459 (Ct.App.1983).

Several courts have considered constitutional challenges to statutes similar to Section 30–20–12. *See Annot.,* 95 A.L.R.3d 411 (1979). Defendant relies on one case, *People v. Klick,* 66 Ill.2d 269, 5 Ill.Dec. 858, 362 N.E.2d 329 (Ill.1977), to support his argument that Section 30–20–12 is overbroad and vague. We have found two other state courts which have struck down similar statutes. *City of Everett v. Moore,* 37 Wash.App. 862, 683 P.2d 617 (1984); *State v. Dronso,* 90 Wis.2d 110, 279 N.W.2d 710 (1979). Also, the Texas statute, after being upheld in several state court cases, *e.g., Alobaidi v. State,* 433 S.W.2d 440 (Tex.Crim.App.), *cert. denied,* 393 U.S. 943, 89 S.Ct. 313, 21 L.Ed.2d 281 (1968), was struck down by the Fifth Circuit as unconstitutionally vague. *Kramer v. Price,* 712 F.2d 174 (5th Cir.1983).

However, statutes of this type have been upheld in twenty-one states.[1] The Connecticut court, which upheld that state's statute in *State v. Anonymous*, was affirmed by the Second Circuit. *Gormley v. Director, Connecticut State Department of Probation*. The Third Circuit, in *United States v. Lampley*, 573 F.2d 783 (3rd Cir.1978), upheld the constitutionality of 47 U.S.C.A. § 223 (West Cum.Supp.1986), which prohibits threatening or harassing interstate telephone calls. Thus, courts that rejected arguments of overbreadth and vagueness in this type statute are in the majority.

### A. Whether Section 30–20–12 is overbroad.

■ A statute is unconstitutionally overbroad if it criminalizes speech that is protected by the first amendment. *See State v. Jaeger*. The three states that struck down their statutes held that they were overbroad. *People v. Klick* ("call made with intent to annoy" not limited to unreasonable conduct); *State v. Dronso* ("intent to annoy" overly broad); *City of Everett v. Moore* ("alarms or seriously annoys" overbroad). The argument is that many constitutionally-protected calls may be made with the intent to annoy.

■ In determining what speech will be protected by the first amendment, courts must balance the right to free speech against other state interests.

Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. * * * To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.

*Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973) (citation omitted).

*People v. Klick* held that the Illinois statute criminalized conduct protected by the first amendment, *i.e.*, the right to communicate to another in a reasonable manner. *Id.*, 362 N.E.2d at 331. Examples of reasonable communications that the court believed were prohibited by the statute include a call made by a customer to express dissatisfaction with a product or service, a call by an irate citizen to a public official, or a call by an individual bickering over family matters. The New Mexico statute requires that a call made with the intent to annoy or disturb must be made maliciously. This excludes valid calls of the type described in *People v. Klick* even if they are intended to cause minor annoyance, since "maliciously" is defined as the intentional doing of a harmful act *without just cause or excuse*, or in utter disregard of the

1. *Donley v. City of Mountain Brook*, 429 So.2d 603 (Ala.Crim.App.1982); *Baker v. State*, 16 Ariz.App. 463, 494 P.2d 68 (1972); *People v. Weeks*, 197 Col. 175, 591 P.2d 91 (1979) (en banc); *State v. Anonymous*, 34 Conn.Sup. 689, 389 A.2d 1270 (1978), *aff'd, Gormley v. Director, Connecticut State Department of Probation*, 632 F.2d 938 (2d Cir.), *cert. denied*, 449 U.S. 1023, 101 S.Ct. 591, 66 L.Ed.2d 485 (1980); *State v. Elder*, 382 So.2d 687 (Fla.1980); *Constantino v. State*, 243 Ga. 595, 255 S.E.2d 710, *cert. denied*, 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979); *Kinney v. State*, 404 N.E.2d 49 (Ind.App. 1980); *State v. Jaeger; State v. Thompson*, 237 Kan. 562, 701 P.2d 694 (1985); *State v. Meunier*, 354 So.2d 535 (La.1978); *Von Lusch v. State*, 39 Md.App. 517, 387 A.2d 306 (1978); *People v. Taravella*, 133 Mich.App. 515, 350 N.W.2d 780 (1984); *State v. Finance American Corp.*, 182 N.J.Super. 33, 440 A.2d 28 (1981); *People v. Smith*, 89 Misc.2d 789, 392 N.Y.S.2d 968 (1977); *State v. Camp*, 59 N.C.App. 38, 295 S.E.2d 766 (1982); *State v. Mollenkopf*, 8 Ohio App.3d 210, 456 N.E.2d 1269 (1982); *Commonwealth v. Lewis*, 30 Pa.D. & C.2d 133 (1962), supp.op. 32 Pa.D. & C.2d 1 (1963); *State v. Brown*, 274 S.C. 506, 266 S.E.2d 64 (1980); *State v. Crelly*, 313 N.W.2d 455 (S.D.1981); *State v. Thorne*, 333 S.E.2d 817 (W.Va.1985). In addition, the Oregon statute was originally upheld, *State v. Zeit*, 22 Or.App. 480, 539 P.2d 1130 (1975); then struck down, *State v. Blair*, 287 Or. 519, 601 P.2d 766 (1979) (en banc). The statute was later rewritten and upheld. *State v. Moyle*, 299 Or. 691, 705 P.2d 740 (1985) (en banc).

consequences. *Potomac Insurance Co. v. Torres,* 75 N.M. 129, 401 P.2d 308 (1965).

Some courts have held that statutes are not overbroad if they require a specific intent to threaten, harass, annoy, etc. "Freedom of speech does not encompass the right to abuse the telephone with the specific intent to annoy and to harass the recipient of the call." *von Lusch v. State,* 39 Md.App. at 525, 387 A.2d at 310. *See State v. Thompson; State v. Finance American Corp.; State v. Brown.* The New Mexico statute also requires specific intent to annoy or disturb. § 30–20–12(A).

In most cases that have rejected challenges of overbreadth, the court has distinguished between the content of speech, protected by the first amendment, and conduct which invades substantial privacy interests. *See generally Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). Most statutes seek to prohibit the latter. Statutes that regulate only the content of speech have been struck down. *See Walker v. Dillard,* 523 F.2d 3 (4th Cir.1975) (Virginia statute prohibiting abusive comments by either caller or recipient and having no intent requirement was facially and substantially overbroad). *See also Radford v. Webb,* 446 F.Supp. 608 (W.D.N.C.1978), *aff'd,* 596 F.2d 1205 (4th Cir.1979) (per curiam) (portion of North Carolina statute regulating pure speech overbroad); *State v. Camp* (subsection of same statute which regulates conduct rather than speech not overbroad or vague).

Several other cases have relied on the distinction between pure speech and conduct. "[The Arizona statute] is not directed at the communication of thoughts or ideas but at conduct, in other words, the use of the telephone to terrify, intimidate, threaten, harass, annoy or offend people by use of the language proscribed." *Baker v. State,* 16 Ariz.App. at 465, 494 P.2d at 70. "[The unlawful use of telephone statute] is not an obscenity or lewdness statute * * * [it] is a statute prohibiting outrageous conduct * * *." *State v. Jaeger,* 249 N.W.2d at 691 (citations omitted). "Clearly the Connecticut statute regulates *conduct,* not mere speech. What is proscribed is the

making of a telephone call, with the requisite intent and in the specified manner. * * Indeed, by its express terms the statute may be violated where no conversation at all occurs." *Gormley v. Director, Connecticut State Department of Probation,* 632 F.2d at 941–42 (emphasis in the original). "[I]t is the manner and means employed to communicate [the messages] which is the subject of the prohibition rather than their content. * * * That words may be the instrument of annoyance does not insulate such wrongful conduct from criminal liability." *State v. Anonymous,* 389 A.2d at 1273–74. *See also State v. Thorne* (harassment is not protected merely because it is accomplished by using the telephone); *State v. Elder* (statute not directed at the communication of ideas but at a range of conduct); *People v. Weeks* (the first amendment does not extend to any person the right to use his power of speech as a battering ram to destroy the tranquility and repose of another person's home); *State v. Crelly* (conduct of this nature is obviously not protected by the guarantees of free speech provided for in the first amendment).

The New Mexico statute is likewise directed at conduct. The making of the call is the prohibited act, not the speaking of any particular words. In fact, the crime may be committed without any words being spoken. Section 30–20–12 is not unconstitutionally overbroad.

**B. Whether Section 30–20–12 is unconstitutionally vague.**

■ To be unconstitutionally vague, a statute must be so vague that men of common intelligence must guess at its meaning. *Broadrick v. Oklahoma.* Absolute precision is not a constitutional requirement. *Kinney v. State.* " '[W]here the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law.' " *Kinney v. State,* 404 N.E.2d at 51, quoting *Screws v. United States,* 325 U.S. 91, 101, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495 (1945).

■ A specific intent requirement has also been held to save a statute from being void for vagueness. *von Lusch v. State.* "The appellant cannot claim confusion about the conduct proscribed where, as here, the statute precisely specifies that the actor must intend to perform acts of harassment in order to be culpable." *United States v. Lampley*, 573 F.2d at 787. But " 'there are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with * * *.' " *Broadrick v. Oklahoma*, 413 U.S. at 608, 93 S.Ct. at 2913, quoting *United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 578–79, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973). A statute proscribing obscene telephone calls, construed as proscribing only calls initiated by one with intent and with the sole purpose of conveying an unsolicited, obscene, imminently threatening or harassing message to an unwilling recipient, is neither unconstitutionally vague or overbroad. *State v. Brown.*

■ The portion of the statute under which defendant was convicted makes it unlawful "to maliciously make a telephone call, whether or not conversation ensues, with intent to annoy or disturb another * * *." § 30–20–12. This sets out " 'terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with * * *.' " *Broadrick v. Oklahoma*, 413 U.S. at 608, 93 S.Ct. at 2913, quoting *United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. at 578–79, 93 S.Ct. at 2897. Section 30–20–12 is not void for vagueness.

## 2. Whether Substantial Evidence Supports the Convictions

Defendant does not deny that he made the telephone calls for which he was convicted. All three telephone calls were recorded and were traced to defendant's number. Tapes of the telephone calls were admitted into evidence. Defendant's only argument on appeal is that the evidence does not support a finding of malicious intent.

■ In determining whether the state has met its burden of proving guilt beyond a reasonable doubt, this court must review the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict. *State v. Lankford*, 92 N.M. 1, 582 P.2d 378 (1978). This court does not weigh the evidence and may not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict. *Id.; State v. Robinson*, 94 N.M. 693, 616 P.2d 406 (1980). The fact finder may reject defendant's version of the incident. *State v. Vigil*, 87 N.M. 345, 533 P.2d 578 (1975). Where a jury verdict in a criminal case is supported by substantial evidence, the verdict will not be disturbed on appeal. *State v. Anaya*, 98 N.M. 211, 647 P.2d 413 (1982).

■ The proven circumstances from which an accused's state of mind or intent can be inferred are his acts, conduct and words. *Caldwell v. State*, 26 Md.App. 94, 337 A.2d 476 (1975); *see also State v. Frank*, 92 N.M. 456, 589 P.2d 1047 (1979); *State v. Ortega*, 79 N.M. 707, 448 P.2d 813 (Ct.App.1968). The intent to harass may be shown by other harassing acts. *State v. Godwin*, 267 N.C. 216, 147 S.E.2d 890 (1966); NMSA 1978, Evid.R. 404(b) (Repl. Pamp.1983). The language used in calls may be considered in determining defendant's intent in making the calls. *Gormley v. Director, Connecticut State Department of Probation.* Likewise, the time that the calls were made and the previous efforts to make defendant desist may be considered. *State v. Zeit.*

■ Defendant argues that the content of the telephone calls to Anita cannot be connected to an inference of malicious intent. Defendant confuses the words spoken with the harassing act of making the telephone call. If the telephone call is made maliciously with the intent to annoy

or disturb, a crime has been committed even if no conversation ensues. § 30–20–12. We now examine the evidence, keeping in mind that "maliciously" denotes the intentional doing of a harmful act without just cause or excuse. *Potomac Insurance Co. v. Torres.*

 The evidence shows a pattern of behavior by defendant toward Anita that supports a finding of malicious intent in making the telephone call on March 23. Defendant and Anita had had an affair some years ago. Defendant began calling her again in July 1984. She asked defendant to stop and sent a certified letter to him in August 1984, asking him not to call or see her again. Defendant admitted receiving the letter.

Between December 1984 and March 1985, Anita received four or five telephone calls which she recognized as being from defendant. One was at 2:20 a.m. and another at 2:00 a.m. Anita testified that the content of the calls included "I love you," "you have pretty tits," "I love your tits." Evidence of this type of call, made to a married woman in the middle of the night, and of Anita's requests to stop such calls, supports an inference that when defendant telephoned Anita at 1:50 a.m. on March 23, he maliciously (without just cause or excuse) intended to harass her. Defendant's conviction on Count 1 is thus supported by substantial evidence.

Counts II and IV are based on telephone calls defendant made to Vickie on April 12, 1985, and May 3, 1985. His relationship with Vickie was much more involved than that with Anita, but again there exists a pattern of harassing behavior.

 Defendant and Vickie had had a rather lengthy affair which ended in December 1984. On April 9 Vickie married Greg L. She called defendant to tell him she had married. Vickie testified that defendant called her frequently around this time and so, on April 11, she had a tape recorder and trap installed on her telephone. When defendant called on April 11, the call was recorded. Vickie clearly asked defendant not to call her again. Defendant admitted making the call and that Vickie told him not to call her anymore. He also admitted that he called her again the next day, April 12.

Two telephone calls from defendant were recorded on April 12, one at 4:20 p.m. and another at 5:10 p.m. In these calls, defendant made insulting remarks about Vickie's husband. These calls are the basis for Count II. There is substantial evidence to support a finding that defendant was aware that Vickie considered his calls annoying and had asked him not to call again.

A week after her marriage, Vickie received an anonymous sympathy card. Expert testimony revealed that one of defendant's fingerprints was on the card. Three days later, defendant was arrested on Counts II and III, but he subsequently followed Vickie in her car for extended periods of time in a threatening manner. Four days after his first arrest, defendant was arrested on Count V.

Even after being arrested twice on charges of harassing Vickie, defendant telephoned her again on May 3, 1985. Vickie testified that defendant said, "I'm sorry, I'm sorry, I'll kill you, I love you," and that she was frightened because defendant had threatened her before.

The record shows a pattern of conduct on the part of defendant designed to annoy, disturb and harass Vickie. His argument on appeal that he was simply a rejected lover attempting to patch things up is not a logical inference. The fact that he once had a relationship with Vickie does not affect her right to be left alone once she has terminated that relationship and married another man. The evidence supports an inference that defendant's telephone call to Vickie on May 3 was made maliciously with the intent to annoy or disturb.

The judgment and sentences are affirmed.

IT IS SO ORDERED.

ALARID and MINZNER, JJ., concur.