Jacqueline P. JONES, Appellant,

v.

MUNICIPALITY OF
ANCHORAGE, Appellee.

No. A-2127.

Court of Appeals of Alaska.

April 22, 1988.

---

Christine S. Schleuss, Anchorage, for appellant.

John E. McConnaughy, III, Asst. Mun. Prosecutor, and Jerry Wertzbaugher, Mun. Atty., Anchorage, for appellee.

Before BRYNER, C.J., SINGLETON, J., and STEWART, District Court Judge.[*]

## OPINION

BRYNER, Chief Judge.

After a bench trial before District Court Judge Natalie K. Finn, Jacqueline P. Jones was convicted of illegal use of the telephone, in violation of Anchorage Municipal Code (AMC) 08.05.590. Judge Finn sentenced Jones to serve forty-five days in jail, with forty days suspended on condition that Jones complete a two-year period of probation. Jones appeals, contending that the trial court erred in refusing to suppress evidence obtained by the use of a warrantless telephone trap, challenging as unconstitutionally vague and overbroad the municipal ordinance under which she was convicted, and arguing that the evidence presented at trial was insufficient to support her conviction. Jones also maintains that her sentence is excessive. We affirm.

In July of 1986, Angela Bolin reported to the Anchorage police that she and her friend, Richard Metz, had received numerous harassing telephone calls at their home from Jacqueline Jones. Jones and Metz had previously been romantically involved, and Jones was apparently resentful of Metz's relationship with Bolin. Bolin and Metz did not talk to Jones personally, because her calls were recorded on an answering machine attached to their telephone. Bolin was able to identify the caller because she was acquainted with Jones and because the caller identified herself as "Jackie."

[*] Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

With Bolin's consent, Anchorage police arranged to have a trap installed on the telephone at the Bolin/Metz residence. A telephone trap is a devise that registers incoming calls and identifies the telephone number of the caller. The trap does not, however, monitor or record the substance of the calls, or even indicate whether the call was completed.

On the evening of October 20, 1986, the telephone trap at the Bolin/Metz residence registered forty-five calls from Jones' number. Thirty-eight messages from Jones were recorded on the answering machine. The messages were uniformly abusive, including the extensive use of obscenity and racial slurs. As on prior occasions, Jones identified herself in many of the recorded messages. After listening to the recordings, Anchorage Police Officer David Sugden telephoned Jones and determined that her voice sounded the same as the voice on the recorded messages. Jones was thereafter charged by the Municipality of Anchorage with illegal use of the telephone.

Prior to trial, Jones moved to suppress the evidence derived from the telephone trap. Jones argued that the warrantless use of the trap violated her constitutional right to privacy. Following an evidentiary hearing, District Court Judge Glen C. Anderson denied Jones' motion. Jones also moved to dismiss the charge against her, contending that, under the applicable ordinance, illegal use of the telephone could only be committed if she actually spoke with another person. Jones insisted that, because the prosecution would rely exclusively on evidence that she left recorded messages on an answering machine, the evidence would be insufficient as a matter of law to support her conviction. District Court Judge John D. Mason denied this motion. Jones was ultimately convicted on the charge by Judge Finn. In entering the verdict of conviction, Judge Finn found:

I do find that—first of all, that the defendant is the person who made the telephone calls. I find that the defendant did have the purpose of making these phone calls and did make them repeatedly for the purpose of harassing or annoy-

ing through patently offensive and profane language....

It is clear to me, Ms. Jones, that you called them names, you used profanity, you insulted Miss Bolin based on her race, you insulted her based on her appearance which you also linked up with her race, you insulted her based on her appearance even apart from her race, you insulted Mr. Met[z] based on his race, you insulted him apart from racial slurs, you describe sexual activities in fairly gross and fairly embarrassing detail, and you described personal events which he had related—apparently related to you in embarrassing detail, and the only possible purpose of those telephone calls was to demonstrate, number one, how angry you were, and the other purpose of that was to demonstrate to them that you were [cap]able of making—able to make these offensive telephone calls....

On appeal, Jones renews her claim that the evidence resulting from the warrantless telephone trap should have been suppressed. For this argument, Jones relies on *State v. Glass*, 583 P.2d 872 (Alaska 1978). In *Glass*, the supreme court ruled that the privacy and search and seizure clauses of the Alaska Constitution (Alaska Const., art. I, §§ 14 and 22) preclude the police from engaging in warrantless electronic monitoring of conversations between two individuals, even when one of the individuals consents to the monitoring. *See also Juneau v. Quinto*, 684 P.2d 127 (Alaska 1984). Jones argues that the rationale of *Glass* should be extended to apply to the warrantless use of telephone traps. The municipality vigorously contests this argument.

■ We need not, however, decide the constitutional issue. An essential component of the decision in *Glass* is the requirement that a person whose conversation is monitored exhibit an actual, subjective expectation of privacy. Here, quite apart from the telephone trap, Jones left messages on an answering machine that was activated by Bolin's and Metz's telephone, knowing full well that her voice was being

electronically recorded. In many of the messages, she identified herself. In none of the messages did she make an effort to conceal her identity. In addressing Jones' conduct, the district court specifically found that Jones failed to exhibit any subjective expectation of privacy. On appeal, Jones has failed to convince us that this factual finding is erroneous. Accordingly, even assuming that the rationale in *Glass* might extend to some situations involving telephone traps, we find no basis for concluding that the trial court erred in finding *Glass* inapplicable in the circumstances of the present case.

Jones next challenges AMC 08.05.590 as unconstitutionally vague and overbroad. The ordinance provides:

*Telephones—Illegal Use Of*

It is unlawful for any person to anonymously or repeatedly telephone another person for the purpose of annoying, molesting, or abusing through patently offensive and profane language, or harassing that person or his family.

Jones contends that this provision is vague because the Alaska Supreme Court and courts of other jurisdictions have struck down as vague comparable provisions using words such as "annoy." *See, e.g., Marks v. Anchorage,* 500 P.2d 644 (Alaska 1972). *See also Coates v. City of Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971).

The ordinance challenged in this case, however, is readily distinguishable from provisions found to be invalid on grounds of vagueness. Cases have condemned statutes as unduly vague when those statutes prohibited conduct or speech resulting in annoyance to others, without specifying any standard by which annoyance was to be gauged and without specifying "upon whose sensitivity a violation does depend— the sensitivity of the judge or jury, the sensitivity of the arresting officer, or the sensitivity of a hypothetical reasonable man." *Coates,* 402 U.S. at 613, 91 S.Ct. at 1688 (footnote omitted).

In contrast, the ordinance challenged here does not purport to hinge the lawfulness of speech or conduct on the standardless, subjective reactions of unspecified third persons. To the contrary, the conduct specified in the challenged ordinance is relatively narrow and specific: the ordinance applies only to the act of using the telephone to call another person, and then only when that act is either anonymous or repeated. More significantly, under the terms of the ordinance, the lawfulness or unlawfulness of the act turns not on the potentially unpredictable, subjective reactions of another person, but rather on the specific intent of the accused. For what the challenged ordinance prohibits is repeated or anonymous calls made by a person whose express and exclusive purpose is to annoy, molest, abuse, or harass the recipient or the recipient's family.

■ With reference to vagueness, the United States Supreme Court has stated:

[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.

*Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). We believe that the challenged municipal ordinance meets this standard. Both in its description of the conduct that it prohibits and the culpable mental state with which that conduct must be performed, the ordinance is reasonably specific and provides adequate notice to allow ordinary people to know what conduct is prohibited. Similarly, the ordinance is sufficiently precise to avoid the potential for arbitrary enforcement.

In reaching this conclusion, we note that other courts have upheld similarly worded provisions. *See, e.g., State v. Camp,* 59 N.C.App. 38, 295 S.E.2d 766, 768 (1982); *People v. Parkins,* 77 Ill.2d 253, 32 Ill.Dec. 909, 910, 396 N.E.2d 22, 23 (1979); *State v. Thorne,* 333 S.E.2d 817, 819 (W.Va.1985); *Gormley v. Director, Connecticut State Department of Probation,* 632 F.2d 938, 941–42 (2d Cir.1980); *State v. Larsen,* 37 Or.App. 425, 588 P.2d 41, 42–43 (1978). *See generally* Annotation, *Validity, Con-*

*struction and Application of State Criminal Statute Forbidding Use of Telephone To Annoy or Harass,* 95 A.L.R.3rd 411 (1979).

At oral argument before this court, Jones' counsel urged this court to give particular consideration to the decision in *Kramer v. Price,* 712 F.2d 174 (5th Cir. 1983). However, we find *Kramer* to be distinguishable. The challenged statute in *Kramer* prohibited any written or telephone communication that "intentionally, knowingly, or recklessly annoys or alarms the recipient." Thus, unlike the ordinance challenged in this case, the unlawfulness of the prohibited conduct in *Kramer* was made to hinge on the subjective reactions of others. Additionally, the defendant in *Kramer* was not required to act with specific intent to annoy the recipient; rather, the defendant was subject to conviction for "intentionally, knowingly or recklessly" annoying another.

We next consider Jones' claim that AMC 08.05.590 is overbroad. The constitutional doctrine of overbreadth applies when a statute is "so imprecisely drawn and overbroad that it 'chills' the exercise of first amendment rights." *Summers v. Anchorage,* 589 P.2d 863, 866–67 (Alaska 1979). Jones correctly notes that speech may be directly regulated by a penal provision only in exceptional circumstances, as when the speech incites or directs imminent lawless action. *See, e.g., Anniskette v. State,* 489 P.2d 1012, 1015 (Alaska 1971). The challenged ordinance in this case does not directly regulate speech. Nevertheless, the conduct it controls is inherently and inextricably related to speech, and so, we assume, *arguendo,* that the ordinance must be subjected to a high level of scrutiny.

As we have already noted, the scope of the challenged ordinance is limited to repeated or anonymous telephone calls, and the ordinance applies to such calls only when the specific and exclusive purpose of the caller is to annoy, molest, abuse, or harass the listener or the listener's family. Thus, the express terms of the ordinance, when accorded their plain meaning, restrict speech only when it is essentially noncommunicative—in other words, only when the speech is devoid of any substantive information and is solely and specifically intended by the speaker to evoke an adverse emotional response from the listener.

So construed, the restriction on speech that results from the challenged ordinance closely resembles, and does not significantly exceed, the type of restriction contained in provisions aimed at prohibiting fighting words that are likely to provoke immediate, violent reaction. We perceive little possibility that the ordinance, as we interpret it, poses any appreciable risk of chilling the legitimate exercise of free speech.

It is nonetheless arguable that, because the precise scope of the challenged ordinance has never previously been clarified by this court or the supreme court, injustice would result from applying our narrow reading of its terms to Jones' case. This argument is unpersuasive. It is conceivable that the challenged ordinance might be interpreted to apply to telephone calls whose basic purpose is communicative. This might be done by construing the ordinance to permit conviction whenever the intent to annoy, molest, abuse, or harass was a secondary or incidental purpose of a telephone caller. Such a broad interpretation, however, finds little support in the plain language of the ordinance and seems implausible, at best. By specifying that *"the* purpose" of the caller, rather than merely *"a* purpose," must be to annoy, molest, abuse, or harass, the challenged ordinance makes it abundantly clear that it was meant to cover only those calls whose sole purpose is to annoy, molest, abuse, or harass. Accordingly, although the challenged ordinance has not previously been subjected to judicial construction, we believe its meaning is reasonably clear on its face.

Jones does not suggest that the trial court applied a broader interpretation of the ordinance in her case. Our own review of the trial court's findings convinces us that the court essentially interpreted and applied the ordinance in accordance with its

plain meaning. We therefore reject Jones' overbreadth challenge.

 Jones next challenges the sufficiency of the evidence to support her conviction. She argues that the ordinance requires an actual conversation between the accused and another person and that a recorded telephone message left on an answering machine does not suffice. We disagree. The language of the ordinance specifies, in relevant part, that the accused must "telephone another person." Although there may be situations in which uncertainty exists as to what constitutes a completed act of "telephoning another person," nothing in the language of the ordinance requires an actual person-to-person conversation, and it defies common sense to suggest that the act of telephoning another person is not completed when a caller leaves a recorded message on the answering machine of the person whose number has been called.

 To the extent that Jones contends that the evidence at trial was generally insufficient to support her conviction, we reject her argument. Our review of the record reveals that the number and nature of the calls constituted substantial evidence supporting the trial court's conclusion that Jones was guilty beyond a reasonable doubt. *Dorman v. State,* 622 P.2d 448, 453 (Alaska 1981).

 Jones' final contention is that her sentence is excessive. She argues that she was entitled to a suspended imposition of sentence. *See Wharton v. State,* 590 P.2d 427, 430 (Alaska 1979). Given Jones' refusal to acknowledge the seriousness of her conduct, however, Judge Finn was justified in concluding that a five-day period of unsuspended jail time would be appropriate and that a suspended imposition of sentence was not called for. *See Mullins v. State,* 573 P.2d 860 (Alaska 1978) (whether to grant suspended imposition of sentence is a matter committed to trial court's discretion). Having independently reviewed the entire sentencing record, we conclude that the sentence of forty-five days with forty days suspended was not clearly mis-

taken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

COATS, J., not participating.