**Gary W. DAILEY, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–7969.

Court of Appeals of Alaska.

March 14, 2003.

Darin B. Goff, Assistant Public Defender, Kenai, and Barbara Brink, Public Defender, Anchorage, for Appellant.

Scot H. Leaders, Assistant District Attorney, Kenai, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

A jury convicted Gary W. Dailey of three counts of failing to comply with the Alaska Sex Offender Registration Act (ASORA).[1] On appeal, Dailey contends that Magistrate David S. Landry erred when he refused to dismiss the three charges, when he instructed the jury on the definition of "knowingly," when he refused to allow Dailey to introduce evidence that he had subsequently complied with ASORA, and when he denied Dailey's motion for a judgment of acquittal. For the reasons below, we affirm Dailey's convictions.

### Facts and proceedings

Dailey was required to register as a sex offender under ASORA beginning in 1996 and to file sworn quarterly verification reports beginning in 1999.[2] In September 1999, December 1999, and April 2000, Dailey prepared quarterly verifications, but refused to sign and attest that the information in those verifications was accurate. For each of these three unsworn verifications, he was charged under AS 11.56.840(a)(4) for not complying with AS 12.63.010(e), the subsection that requires sex offenders to file sworn quarterly verifications.

Before trial, Dailey moved to dismiss the charges on the ground that his refusals to swear to the contents of each quarterly verification report he filed did not constitute criminal offenses under AS 11.56.840. Dailey also argued that the statute was unconstitutionally vague. The State opposed and Magistrate Landry denied the motion.

Before trial, the State sought a protective order to bar Dailey from introducing evidence that, after he was charged with the instant offenses, he properly filed sworn quarterly verifications. Over Dailey's objection, this motion was granted.

The case proceeded to a jury trial, with Magistrate Landry presiding. During trial, Alaska State Trooper Karl J. Erickson testified that Dailey had said he would continue to refuse to sign his forms. Dailey asked Magistrate Landry to reconsider the protective order. He argued that the State had opened the door, and that the evidence that he was now complying with ASORA was admissible to rebut the State's evidence that he had said that he would never properly register. Magistrate Landry reaffirmed his decision to grant the protective order. However, he also determined that the State's evidence that Dailey had said he would continue to refuse to sign the forms was not relevant to whether Dailey did or did not comply with the registration requirements. He instructed the jury not to consider the testimony for this purpose; he also refused to allow Dailey to introduce evidence of his recent compliance. At the close of the State's case-in-chief, Dailey moved for a judgment of acquittal. Magistrate Landry ultimately denied this motion.

---

1. AS 11.56.840(a)(4); AS 12.63.010.

2. *See* AS 12.63.010.

When the parties discussed jury instructions, Dailey offered an instruction defining "knowingly" in a way that he argued would have required the State to prove that Dailey knew he had a duty to file sworn verification forms. He generally argued that because he was charged with a failure to act, the State had to prove that he was aware that he had a duty to act. He argued that without this additional element, the crime became one of strict liability. Magistrate Landry rejected Dailey's instruction and gave a pattern jury instruction that used the statutory definition of "knowingly." [3]

The jury found Dailey guilty on all three counts.

### Discussion

*Should the trial court have dismissed the charges on the grounds that refusing to file sworn quarterly verification forms is not a criminal offense under AS 11.56.84 or because the statutory scheme involved is unconstitutionally vague?*

Dailey asserts that his failure to swear to the accuracy of the information in the verification forms was not an element of the offense of failing to register as a sex offender. He argues that AS 11.56.840 does not criminalize the failure to file a sworn verification. He points out that while AS 11.56.840(a)(4) requires him to provide the information required in AS 12.63.010(b), a sworn signature is not listed as part of the required "information," nor, he argues, is a signature itself "information." He also claims that this statutory scheme is unconstitutionally vague because he lacked notice that it was a criminal offense to knowingly fail to file sworn verification forms.

■ To resolve Dailey's claim, we must interpret the last clause of AS 11.56.840(a). This statute provides that a person commits the crime of "failure to register as a sex offender" in the second degree if the person knowingly fails to "(1) register, (2) file the written notice of change of address, (3) file the annual or quarterly written verification, or (4) supply all of the information required to be submitted under (1)-(3) of this subsection, *as required in AS 12.63.010.*" [4] The question is whether the clause "as required in AS 12.63.010" refers solely to subsection (4) of AS 11.56.840(a), or whether it refers to all four subsections. Based on the legislature's clear intent in AS 12.63.010–AS 12.63.100 to require convicted sex offenders to register and to periodically provide certain information to the State, we conclude that the legislature intended this clause to refer to all four subsections of AS 11.56.840. Hence, Dailey was required to "file . . . quarterly written verification[s] . . . as required in AS 12.63.010." [5]

Under AS 12.63.010(b), (d), and (e), sex offenders required to register under AS 12.63.010(a) are required to provide certain information to the state. Convicted sex offenders who, like Dailey, are required to register "for life . . . shall, not less than quarterly, on a date set by the department, *provide written verification to the department, in the manner required by the department,* of the sex offender's . . . address and any changes to the information previously provided under (b)(1) of this section." [6] Furthermore, subsection (e) requires that the "required . . . *quarterly verifications must be sworn to by the offender* . . . and contain an admonition that a false statement shall subject the offender . . . to prosecution for perjury." [7]

Thus, AS 12.63.010 requires sworn quarterly verifications. By refusing to swear to the accuracy of the information in his verification forms, Dailey failed to "file . . . quarterly written verification[s] . . . as required in AS 12.63.010." [8] Hence, each time Dailey knowingly failed to provide a sworn quarterly verification form, he committed the offense defined in AS 11.56.840(a)(3).

---

**3.** *See* AS 11.81.900(a)(2).

**4.** Emphasis added.

**5.** *See* AS 11.56.840(a)(3).

**6.** *See* AS 12.63.010(d)(2) (emphasis added).

**7.** AS 12.63.010(e) (emphasis added).

**8.** *See* AS 11.56.840(a)(3).

Although Dailey separately argues that this scheme is unconstitutionally vague because it did not provide him with adequate notice that his conduct was a criminal offense, we conclude that the statutes provided him with adequate notice that it was a crime to knowingly fail to file sworn written quarterly verification forms.

We conclude that Magistrate Landry did not err when he denied Dailey's motion to dismiss.

*Did Magistrate Landry err when he instructed the jury on the elements of failing to file sworn quarterly verifications?*

Under AS 11.56.840(a), it is an offense for a person to "knowingly fail[ ] to ... file ... the quarterly written verification, or ... supply all of the information required to be submitted under (1)-(3) of this subsection, as required in AS 12.63.010." Here, Dailey was charged with knowingly failing to file sworn quarterly written verifications of his sex offender registration. The *actus reus* of this offense was his failure to file sworn verifications. The culpable mental state that applies to this element of the offense is "knowingly." But, because Dailey was prosecuted for a failure to act, the State also had to prove a second culpable mental state: that Dailey was aware of the circumstances that triggered his duty to act.[9] In other words, to convict Dailey of failure to file sworn written quarterly verifications, the State had to prove both that Dailey was aware of the circumstances giving rise to his duty to file sworn quarterly written verifications and that he knowingly refrained from performing that duty.

■ Dailey's jury was instructed that, among other things, the State had to prove for each count that Dailey had "knowingly

failed to file a sworn quarterly written verification." Dailey's attorney did not expressly object to this instruction on the ground that the State, in addition to proving that he had knowingly failed to file, had to prove that he was aware of the duty to file. He did, however, generally object below to any instruction that "directs the jury to convict if he doesn't sign the form, because I think that's oversimplified; I think ... it creates problems with the *mens rea.*" He argued that the court's proposed pattern instruction for "knowingly" made the offense "a strict liability crime, where if an individual simply fails to register, and ... knows he didn't register, well, that's the end of the story." He went on to say that "[w]hat we've got here is a crime of omission.... [I]f you don't know that you have a duty to register, you can't knowingly fail to register."

After making this objection, Dailey offered the following instruction to define the culpable mental state he thought was required:

A person has the required mental state for the crime of failure to register as a sex offender if one of the following is true:

1. The person knew that the person had a duty to file a sworn quarterly written verification;

2. The person was aware of and consciously disregarded a substantial and unjustifiable risk that he had a duty to file a sworn quarterly written verification; or

3. The person failed to perceive a substantial and unjustifiable risk that the person had a duty to file a sworn quarterly written verification.

Disregard of, or failure to perceive the risk must, under the circumstances, amount to a gross deviation from the standard of care that a reasonable person would observe in this situation.

9. *See, e.g., Lambert v. California,* 355 U.S. 225, 229–30, 78 S.Ct. 240, 243–44, 2 L.Ed.2d 228 (1957) (holding that a person could not be convicted consistently with due process for failure to register as a felon if the person did not know of the duty to register and there was no proof of the probability of such knowledge); *Hentzner v. State,* 613 P.2d 821, 826 (Alaska 1980) (holding that consciousness of wrongdoing was an element of the offense of willfully failing to register securities); *Speidel v. State,* 460 P.2d 77, 80

(Alaska 1969) (holding that the statute punishing failure to return a rented motor vehicle was invalid to the extent that it punished a person who had no awareness of wrongdoing); *Steve v. State,* 875 P.2d 110, 122 (Alaska App.1994) (quoting 1 W. LaFave and A. Scott, *Substantive Criminal Law* § 3.3(b), at 289–90 (1986) ("the prevailing view is that [one] may not be held liable [for failing to perform an act] if [one] does not know the facts indicating a duty to act").

He noted that he had derived this instruction from one used for driving while license suspended and argued that it more accurately defined the culpable mental state required for a *malum prohibitum* crime. Magistrate Landry refused to give this instruction. He said that "there's no way I'm going to, in a knowingly jury instruction, provide language that both tracks ... reckless and ... criminal negligence." Dailey's attorney then asked if Magistrate Landry wanted him to "provide some other instruction," or if the court was going to proceed with another version of the instruction. Magistrate Landry ruled that he was "going to stick with the knowingly instruction that has been the pattern instruction that I've always used in the past." He later gave the following jury instruction:

> A person acts "knowingly" with respect to conduct or to a circumstance described by a provision of law defining an offense when the person is aware that the conduct is of that nature or that the circumstance exists. When knowledge of the existence of a particular fact is an element of an offense, that knowledge is established if a person is aware of a substantial probability of its existence, unless the person actually believes it does not exist.

■■■ We find that the instruction Magistrate Landry gave defining "knowingly" was proper. However, while we agree with Magistrate Landry's decision to reject Dailey's requested instruction, we also find that the jury was not clearly instructed that the State had to prove that Dailey was aware of the circumstances giving rise to his duty to file signed and attested verifications. Below, Dailey should have objected to the instructions that defined the elements of the charged offenses, rather than the definition of "knowingly." But, despite the fact that both his objections and his proposed instruction served to confuse this issue more than to

provide guidance, we find that Dailey adequately alerted the district court that the jury instructions were incomplete.[10] Because this omission was an error that "lies in the court's definition of the elements of the offense," we must reverse Dailey's conviction unless we are convinced that the error was harmless beyond a reasonable doubt.[11] In determining whether errors are harmless beyond a reasonable doubt, the question is whether there is a reasonable possibility that the error affected the result.[12]

The jury heard overwhelming evidence that Dailey knew he was obliged to sign and attest to the verification forms. First and foremost, Dailey in his testimony never actually said he was unaware of his duty to sign and attest to the information on the forms. Additionally, the evidence showed that in August 1999, the Department of Public Safety had mailed to all sex offenders—from a list that included Dailey—notice that they were required to file complete verification forms. This notice, which included a blank verification form, explained that the verification form must be complete, that it had to be signed, and that it had to be signed in front of a notary or an agency representative, if available. The notice also indicated in bold font that "[f]ailure to return your completed registration form ... may cause you to be out of compliance with Alaska's registration law."

The verification forms themselves instructed sex offenders to provide a signature and a date. The evidence also included copies of Dailey's previous annual verification forms, which he had signed. Dailey's own testimony at trial illustrates that he read the forms, that he was aware that he had to sign and attest to the information on the verification forms, but that he chose not to because he was afraid of committing perjury.

**10.** See *Ervin v. State*, 761 P.2d 124, 126 (Alaska App.1988) (even though record was not clear, and despite the fact that the proposed instruction misstated the law, defendant's proposed instruction preserved his objection because it was "sufficient to focus the court's attention on the issue of the culpable mental state.")

**11.** See *McKillop v. State*, 857 P.2d 358, 366 (Alaska App.1993); *see also Raphael v. State*, 994 P.2d 1004, 1010 (Alaska 2000) (constitutional error is a ground for reversal of conviction unless the error is harmless beyond a reasonable doubt).

**12.** See *Smithart v. State*, 988 P.2d 583, 589 (Alaska 1999).

Additionally, the September 1999 form showed that Dailey consciously refused to provide a sworn signature writing "I do not swear or attest" and "I will not pay to do this" (that is, pay for a notary) in the signature section of the verification form. There was similar evidence that Dailey was told his December 1999 form was incomplete without his sworn signature, but that he nevertheless "refused to sign and complete [the] form"; when told the form was not completed properly, "he said he wasn't going to do it and walked out." Dailey conceded in his testimony that he had been told that he had to sign the December form, but that he "wouldn't sign it." Furthermore, Dailey told Trooper Erickson that he had not signed his verification forms in part because he felt he should no longer have to register. Additionally, on the April 2000 form, Dailey dated the signature block, but submitted it unsigned.

Based on the evidence in this case, no reasonable juror could have found that Dailey was unaware of the duty to sign and attest to the information he provided in the quarterly verifications. We therefore conclude that the error in the jury instructions was harmless beyond a reasonable doubt.

*Should the trial court have allowed Dailey to rebut a witness's testimony that indicated that he had claimed that he would never register?*

As we mentioned above, the court granted the State's request for a protective order precluding Dailey from introducing evidence that, after he was charged with the instant cases, he began to comply with ASORA by submitting sworn verifications.

On appeal, Dailey argues that he should have been allowed to rebut the testimony that he would never register. He claims that once Trooper Erickson "presented evidence that Dailey had no intention of complying with the registration statute, Dailey should have been afforded the opportunity to rebut that assertion with evidence that he did, in fact, sign the form after learning of the statutory requirement to do so."

■ At trial, immediately following Erickson's testimony, Dailey's attorney made this same point: "Your honor, I think [the State] has opened the door to the issue of whether or not Mr. Dailey did continue to refuse.... [The State's] positing [as its] theory [in] this case that my client is defiant, and that he's never going to [register]." Dailey asked to introduce evidence that after he was charged, he had complied with ASORA's registration requirements. The magistrate, however, refused to change his earlier ruling that evidence of Dailey's subsequent compliance was inadmissible.

■ Dailey then asked for an instruction that the trooper's "comment that [Dailey] would never register [was] irrelevant, because I have no way of rebutting it." The State countered that the evidence of Dailey's statement was relevant to Dailey's state of mind at the times he failed to register, while evidence of his subsequent compliance was not. After this discussion, Magistrate Landry cautioned the jury to not consider the trooper's testimony that Dailey said he would refuse to file sworn verification forms in the future "as evidence that Mr. Dailey did or did not comply with the registration requirements." Dailey did not object to this instruction, nor did he ask for any additional language. Ordinarily we presume that a jury follows the court's limiting instructions.[13] Here, we conclude that Magistrate Landry's instruction was adequate to address Dailey's concern about rebutting the trooper's testimony.

■ Dailey also appears to argue that evidence of his subsequent compliance should have been admitted as evidence that he had not understood he had a duty to sign his verification forms. He claims that this evidence may have led the jury to "entertain reasonable doubt as to [his] guilt[,] ... especially [concerning] the 'knowing' element of the offense." But evidence that Dailey began to file verified registration forms after he was charged with the instant offenses was at best only marginally relevant to show his

---

**13.** *See State v. McDonald*, 872 P.2d 627, 654–55 (Alaska App.1994) (citing *Whiteaker v. State*, 808 P.2d 270, 277 (Alaska App.1991)).

mental state before he was charged. Moreover, the magistrate had, prior to the start of trial, already ruled that this marginal evidence was outweighed by the risk of confusing or misleading the jury.[14]

■ We will not overturn an evidentiary ruling in the absence of a clear abuse of discretion.[15] Here, we conclude the magistrate did not abuse his discretion when he excluded evidence of Dailey's subsequent compliance with ASORA.[16]

*Should the trial court have granted Dailey's motion for a judgment of acquittal?*

At the close of the State's case-in-chief, Dailey moved for a judgment of acquittal. Magistrate Landry denied his motion. On appeal, Dailey argues that this was error.

■ When a defendant attacks a conviction for insufficiency of the evidence, this court must view the evidence presented, and reasonable inferences from the evidence, in the light most favorable to upholding the jury's verdict.[17] Viewing the evidence from this perspective, this court must decide whether a fair-minded juror exercising reasonable judgment could conclude that the State had met its burden of proving guilt beyond a reasonable doubt.[18]

Considering "only those facts in the record most favorable to the prosecution and such reasonable inferences as a jury may have drawn from them,"[19] the evidence showed that Dailey knew that he had a duty to register, that he was required both by statute and by the administering agency, the Department of Public Safety, to file sworn written quarterly verification forms, and that he knowingly failed to file them. The State put on three witnesses: Trooper Erickson, and two Department of Public Safety employees, Barbara Lynn Roper and Leda Evans. Erickson testified that he stopped Dailey for a vehicle equipment violation. During the stop, he discovered that Dailey was considered non-compliant with ASORA. The information Erickson received indicated that Dailey had refused to sign his verification forms. When asked, Dailey admitted that he had not signed the verification forms. Erickson testified that Dailey said that "he was not going to be signing anything, ... and that if it meant jail, that was fine with him." According to Erickson, Dailey also said that he had served his time and that he did not believe that he had to be involved with the registration requirements. Dailey did not say that he did not understand the form or that he had been concerned about committing perjury.

Roper, a clerk who worked in the Soldotna trooper post, testified that Dailey brought the December 1999 form to her office to file; she told him that it had to be signed and completed. According to Roper, Dailey refused to do so and walked out. Again, Dailey did not ask any questions about the form or about the need to sign it. He did not indicate that he did not understand what he was supposed to do or ask for any assistance. Instead, when told the form was not completed properly, "he said he wasn't going to do it and walked out." Roper then wrote on Dailey's unsworn verification form that Dailey had refused to sign.

Evans, the supervisor for the sex offender central registration program, testified that beginning in 1999, Dailey was required to

---

14. Alaska Evidence Rule 403 provides in part that relevant evidence "may be excluded if its probative value is outweighed by the danger of ... confusion of the issues, or misleading the jury[.]"

15. *See Hawley v. State,* 614 P.2d 1349, 1361 (Alaska 1980) ("the admissibility of evidence is largely within the trial court's discretion and its rulings will not be overturned on appeal in the absence of an abuse of discretion.").

16. *Cf. Stumpf v. State,* 749 P.2d 880, 900 (Alaska App.1988) (trial judge did not abuse discretion when excluding evidence of defendant's cooperation with the police and the fact that he made a statement even though this evidence was marginally relevant to establish a lack of consciousness of guilt).

17. *See Simpson v. State,* 877 P.2d 1319, 1320 (Alaska App.1994).

18. *See Dorman v. State,* 622 P.2d 448, 453 (Alaska 1981).

19. *Martin v. Fairbanks,* 456 P.2d 462, 464 (Alaska 1969), *partially overruled on other grounds in Whitton v. State,* 479 P.2d 302 (Alaska 1970).

register quarterly. She testified that all sex offenders, including Dailey, were notified of this requirement by letter in August 1999. This letter, which included a blank verification form, explained that the verification form had to be completed and signed, and that it had to be signed in front of a notary or an agency representative, if available. The letter also indicated in bold font that "[f]ailure to return your completed registration form in the time specified may cause you to be out of compliance with Alaska's registration law."

Evans also said that quarterly reminders were mailed, along with a blank verification form. She testified that Dailey had submitted his September 1999 form to the central registry by mail but had not signed it. She said that on that form he had scratched out the language stating "I certify under penalty of perjury that the above information and attachments are true" and had written "I do not swear or attest." Evans testified that the verification form was not valid because Daily had refused to attest to the information he was providing. Evans testified that the December 1999 form that had been given to Roper in Soldotna was also invalid because he had refused to sign and complete the form.

Evans then testified that the State had sent notice in April 2000 to Dailey that his last valid verification was from December 1998; she said that the other verifications were invalid because they all were unsigned. She testified that Dailey mailed his April 2000 verification form to central registry but that it too was not signed. Evans said that generally when a verification form is mailed to the central registry unsigned, the department does not immediately treat it as an intentional violation because there is a chance the offender forgot to sign the form. The department conducts a follow-up investigation to see if there was an ASORA violation.

Evans testified that despite the fact that central registry accepted Dailey's verification forms and considered him compliant pending follow-up investigations, Dailey had in fact not complied in September 1999, December 1999, or April 2000. She testified that based on her review of the forms, Dailey had intentionally refused to sign the September and December forms and was not in compliance with ASORA with any of the three forms.

Dailey admitted in his testimony that he knew he had to register. He said that he refused to sign the forms because he was concerned with the perjury warning. He also admitted that Roper informed him his December 1999 form was incomplete because it was not signed but acknowledged that he told her to file it anyway.

Looking at the evidence in the light most favorable to the State and at all reasonable inferences that the jury may have drawn from that evidence, there was sufficient evidence to support Dailey's convictions for knowingly failing to file sworn written quarterly verification forms in September 1999, December 1999, and April 2000.

*Conclusion*

Dailey's convictions are AFFIRMED.