Allen G. LAU, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9715.

Court of Appeals of Alaska.

Jan. 18, 2008.

Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Allen G. Lau appeals his convictions for felony driving under the influence, felony breath-test refusal, driving while his license was suspended, and sixth-degree misconduct involving a controlled substance (possession of marijuana).[1] Lau claims that the superior court improperly allowed the State to amend the indictment on the first day of trial. Lau further claims that the trial judge committed error in connection with the State's playing of a video tape and an audio CD, by allowing the State to turn off the sound at various places rather than physically redacting the videotape and the CD. Finally, Lau claims that the trial judge improperly allowed the State to introduce two prescription pill bottles and some pills that the police found when they searched Lau's car following his arrest.

For the reasons explained here, we conclude that none of the superior court's actions requires reversal of Lau's convictions.

*Background facts*

Palmer Police Officer Kelly Turney was on patrol when he noticed a vehicle driving without headlights. Turney ran a check on the license plate and discovered that the vehicle registration had expired, so he stopped the vehicle. Lau was the driver of this vehicle.

During his contact with Lau, Officer Turney discovered that Lau's driver's license was suspended, and he also saw signs that Lau might be under the influence. Turney administered field sobriety tests and a preliminary breath test to Lau, and he videotaped the administration of these tests.

Based on the results of these tests, Turney arrested Lau for driving under the influence, as well as for driving with a suspended license.

Following this arrest, Turney searched Lau's person, while another officer searched Lau's vehicle. Turney found marijuana in one of Lau's pockets, and the other officer found a rifle and ammunition in the car. The other officer also found a small assortment of pills inside two prescription pill bottles.

Turney then transported Lau to the Palmer police station for administration of a breath test. When Turney asked Lau to submit to the breath test, Lau refused.

Based on these events, and based on Lau's prior criminal history, Lau was indicted for felony driving under the influence and felony breath-test refusal. Lau was also charged with three misdemeanors: driving while his license was suspended, fourth-degree weapons misconduct (possession of a firearm while

---

1. AS 28.35.030(n), AS 28.35.032(p), AS 28.15.291(a)(1), and AS 11.71.060(a)(1), respectively.

intoxicated), and sixth-degree controlled substance misconduct (possession of marijuana).

Lau's jury was unable to reach a verdict on the weapons charge, but they found Lau guilty of all the other charges.

### The amendment of the indictment

■ On the day that Lau's trial began, the State sought permission to amend the count of the indictment that charged Lau with felony DUI. As originally worded, this count alleged that Lau

> drove or operated a motor vehicle while under the influence of an alcoholic beverage, inhalant, or controlled substance when there was 0.08% or more by weight of alcohol in his blood or when there was 0.08 grams or more per 210 liters of his breath[.]

This wording represents an amalgam of the two discrete ways in which a person can violate Alaska's DUI statute, AS 28.35.030(a). Subsection (1) of this statute forbids a person from operating a motor vehicle "while under the influence of an alcoholic beverage, intoxicating liquor, inhalant, or any controlled substance, singly or in combination." Subsection (2) of the statute forbids a person from operating a motor vehicle "if ... there is 0.08 percent or more by weight of alcohol in the person's blood or 80 milligrams or more of alcohol per 100 milliliters of blood, or if there is 0.08 grams or more of alcohol per 210 liters of the person's breath."

As already explained, Lau refused to take the breath test. Thus, the State had no admissible evidence of Lau's blood or breath alcohol level. Instead, the State intended to rely on the theory specified in subsection (1) of the statute—that Lau operated his car while under the influence. Consequently, the prosecutor asked the superior court for permission to amend the wording of this count by striking all of the language after the words "controlled substance"—that is, the language that referred to the theory that Lau had "0.08% or more by weight of alcohol in his blood or ... 0.08 grams or more per 210 liters of his breath."

Lau's attorney objected to the amendment, arguing that the grand jury must have intended to indict Lau solely on a "blood alcohol level" theory. But when the trial judge, Superior Court Judge Eric Smith, asked the defense attorney to specify exactly what prejudice Lau would suffer if the proposed amendment was allowed, the defense attorney failed to specify any prejudice. Instead, the defense attorney merely asserted that it would be procedural error for the judge to allow the amendment.

That argument was meritless. Alaska Criminal Rule 7(e) expressly allows the superior court to amend an indictment at any time before the jury reaches its verdict, so long as the amended indictment does not charge an additional or different offense, and so long as the defendant is not prejudiced by the amendment.

Judge Smith concluded that, because Lau had refused to submit to the breath test, "the only way Mr. Lau could have been indicted was [under] an impairment theory." Therefore, the judge concluded, the State's proposed amendment did not raise an additional or different offense. Moreover, based on his review of the grand jury record, and based on the defense attorney's failure to specify a way in which the amendment would hamper the presentation of Lau's defense, Judge Smith concluded that the amendment would not prejudice Lau's substantial rights. Judge Smith therefore allowed the amendment of the indictment.

On appeal, Lau still fails to identify any way in which the amendment prejudiced his defense. Instead, he argues that Judge Smith violated his right to grand jury indictment.

Lau argues that Judge Smith ignored the grand jury's factual basis for indicting Lau for felony DUI, and that Judge Smith improperly substituted his own personal conclusion regarding the factual basis of that charge.

Lau's argument is unconvincing. The record shows that the amendment to the DUI count of the indictment was proper because it brought that count into conformity with the evidence presented to the grand jury.

Admittedly, the record is scanty—for Lau has not provided us with a transcript of the

grand jury proceedings. However, during Lau's trial, the parties discussed the evidence heard by the grand jury, and that discussion supports Judge Smith's decision to allow the amendment of the indictment.

As explained above, the original wording of the DUI count of the indictment referred to both theories of DUI: the "under the influence" theory and the "blood alcohol level" theory. But the grand jury heard no evidence of Lau's blood alcohol level. Indeed, the grand jurors heard evidence that Lau had refused to take the breath test—and they separately indicted him for this additional offense.

At one point in the proceedings, a grand juror apparently asked if any breath test had been conducted to determine Lau's level of intoxication. And the grand jury transcript apparently shows that one of the police witnesses testified that a preliminary breath test (*i.e.*, a test conducted on a portable, hand-held device) had been administered to Lau in connection with the field sobriety tests. But the grand jury apparently heard no testimony concerning the result of this preliminary breath test—or any other alcohol test.

In other words, based on the record before us, the "under the influence" theory of DUI was the only theory of prosecution supported by the evidence presented to the grand jury. Indeed, given this record, Lau himself would surely have been entitled to ask Judge Smith to strike the language of the indictment that referred to a blood alcohol level theory of prosecution.

■ To the extent that Lau continues to argue that Judge Smith misinterpreted the grand jury testimony, or that the judge misconceived the grand jury's factual basis for deciding to indict Lau for felony DUI, we deem Lau's arguments to be waived because he did not provide this Court with a transcript of the grand jury proceedings.

In short, we uphold Judge Smith's decision to allow the State to amend this count of the indictment.

### The playing of the videotape and the audio CD

■ At trial, Lau's attorney anticipated that the State would play the videotape (or other audio recording) of Lau's field sobriety tests. This created a problem for the defense because, immediately following the administration of these tests, Officer Turney told Lau that he was being arrested for *felony* DUI—thus implying that Lau had a prior record of convictions for DUI and/or breath-test refusal. In addition, the State had a videotape of the later encounter at the police station when Lau refused to take the breath test. Upon his refusal, Lau was informed that he would be charged with *felony* breath-test refusal—again implying that Lau had a prior record of convictions for DUI and/or breath-test refusal.

The defense attorney asked for a protective order that would keep these references from the jury. Judge Smith granted this request; he ordered redaction of the statements where Lau was informed that his offenses were felonies. However, for technical reasons, it apparently was not feasible to redact the videotape that the State was going to use at trial. Because of this, Judge Smith—over Lau's objection—allowed the State to simply turn off the sound at the point in the recording where Turney told Lau that he was under arrest for felony DUI.

Later in the trial, the State played an audio recording of Lau's refusal to submit to a breath test. (The audio portion of this encounter had been transferred to a CD.) Before playing the CD, the prosecutor acknowledged that the part of this audio file where Lau was informed that he would be charged with felony breath-test refusal had not been redacted from the recording. However, the prosecutor offered to turn off the sound at that point in the recording. Judge Smith—again, over Lau's objection—allowed the prosecutor to play the CD using this procedure.

On appeal, Lau asserts that turning the sound off, as opposed to actually redacting the two recordings, was "inappropriate" under Evidence Rule 403. He argues that the jury might have speculated about what the officers said to Lau during the silent portions

of the two recordings, and that this potential speculation might have prejudiced the jury's consideration of the case.

But Judge Smith (at Lau's request) expressly instructed the jury not to speculate about what the officers might have said during these portions of the recordings. Immediately after the videotape was played, and again after the CD was played, Judge Smith instructed the jurors that he had concluded that what was said on these silent portions of the recordings was inadmissible—and that the jurors were not to speculate about the contents of these portions. Indeed, Judge Smith's cautionary instructions employed language that Lau himself proposed.

Lau nevertheless argues that the cautionary instructions must have been ineffective because, in both instances where the prosecutor turned the sound off, the jurors were "alerted" that the recordings contained "information that they were not allowed to hear"—thus inevitably prompting the jurors to speculate about the contents of these portions. There are two answers to this contention.

■ First, as we just explained, Judge Smith gave the jurors explicit instructions *not to speculate* about the content of the inaudible segments. The law presumes that jurors will follow this kind of cautionary instruction,[2] and the record of Lau's trial contains no contrary indication—*i.e.*, no indication that the jurors failed to abide by Judge Smith's admonition.

Second, if Judge Smith had sustained Lau's objection and had insisted on physical redaction of the recordings, this redaction—especially, the redaction of the videotape—would likewise have alerted the jurors that something was missing. Thus, if Judge Smith had adhered to the procedure that Lau now advocates, this procedure would have raised exactly the same concerns that Lau advances in this appeal.

For these reasons, we uphold Judge Smith's decision on this matter.

*Evidence of the pills and pill bottles found in Lau's vehicle*

■ At Lau's trial, Judge Smith allowed the State to introduce the two pill bottles (and the various pills inside these bottles) that the police found in Lau's car after his arrest. A police officer later testified that some of the pills found in these containers were Naproxen (which, the officer explained, was "basically Aleve"), and that another of the pills was "[a] morphine tablet of some form." In addition, the State presented testimony that one of the pill bottles carried a warning label which stated that a person taking that medication could become drowsy.

Lau objected that the physical evidence (*i.e.*, the two pill bottles and the pills) was irrelevant, but Judge Smith overruled this objection, apparently concluding that this evidence was potentially relevant on the question of whether Lau might have been under the combined influence of alcohol and controlled substances. Lau offered no objection to the police officer's testimony identifying one of the pills as morphine.

On appeal, Lau renews his objection that this evidence lacked relevance. This objection has more force now that Lau's trial is over—because, as it turns out, when the prosecutor argued Lau's case to the jury, she did not rely on the theory that Lau was under the combined influence of alcohol and controlled substances. Rather, the prosecutor only argued that Lau was under the influence of alcohol. (The prosecutor noted that Lau was charged with driving under the influence of intoxicating liquor or controlled substances, but in his argument to the jury the prosecutor never suggested that there was any connection between Lau's impairment and the presence of the pills in Lau's car.)

But the situation was different when, during the trial, the State offered this evidence and Judge Smith ruled on its admissibility. As we have noted, the DUI count of the indictment charged Lau with operating a motor vehicle "while under the influence of an alcoholic beverage, inhalant, or controlled substance." And when this evidentiary issue

**2.** *See Dailey v. State*, 65 P.3d 891, 897 (Alaska App.2003); *State v. McDonald*, 872 P.2d 627, 654–55 (Alaska App.1994); *Whiteaker v. State*, 808 P.2d 270, 277 (Alaska App.1991).

was presented to Judge Smith, the prosecutor argued that evidence of the pills was relevant because

> *Prosecutor:* ... there is clearly evidence [that Lau] was under the influence of something.... And the question is, "Was he under the influence of alcohol or drugs?" These [pills] were found in his car.

In other words, given the factual and procedural context in which Judge Smith made his ruling, the judge could reasonably conclude that the presence of the pills in Lau's vehicle was relevant to the charge of DUI.

■ If Lau believed that the State's litigation strategy later diminished or eliminated the relevance of this evidence, he was obliged to ask Judge Smith to reconsider this issue, and to request some form of relief (either a cautionary instruction or, perhaps, a mistrial).

Moreover, given the fact that the prosecutor relied on a theory of alcohol intoxication, and given the evidence supporting that theory, we conclude that the admission of this contested evidence was unlikely to have affected the verdict. Thus, any error would be harmless.[3]

*Conclusion*

For the reasons explained here, we conclude that none of Lau's claims of error merits reversal of his convictions. Accordingly, the judgement of the superior court is AFFIRMED.

---

**3.** *See Love v. State,* 457 P.2d 622, 629–631 (Alaska 1969).