NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*
*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

CHRISTOPHER BRANDON BAINES,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-13596
Trial Court No. 3AN-18-02764 CR

O P I N I O N

No. 2753 — July 28, 2023

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael L. Wolverton, Judge.

Appearances: David T. McGee, Attorney at Law, under contract with the Public Defender Agency, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Eric A. Ringsmuth, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Terrell, Judges.

Judge WOLLENBERG.

Christopher Brandon Baines was convicted, following a jury trial, of multiple crimes in connection with a series of car break-ins, including two counts of first-degree robbery, several counts of third-degree assault, one count of failure to stop at the direction of a peace officer, and one count of being a felon in possession of a

concealable firearm. Baines was sentenced to a composite term of 14 years and 4 months to serve. Baines now appeals his convictions and sentence, raising three claims.

First, Baines argues that the State presented insufficient evidence to support one of his convictions for first-degree robbery. Having reviewed the record, we conclude that the evidence, when viewed in the light most favorable to the jury's verdict, was sufficient to support this conviction.

Second, Baines argues that the superior court erred in admitting evidence of two pretrial eyewitness identifications. In particular, Baines contends that, in assessing the reliability of the identifications, the superior court improperly relied on independent, corroborative evidence of his guilt. We agree with Baines that independent evidence of a defendant's guilt is not a proper consideration in evaluating the admissibility of an eyewitness identification. However, we ultimately conclude that any error in admitting the challenged identifications is harmless beyond a reasonable doubt in this case.

Finally, Baines contends that the superior court should have run a greater portion of his individual sentences concurrently with one another. For the reasons explained in this decision, we reject Baines's sentencing claims.

We therefore affirm the judgment of the superior court.

*Underlying facts and proceedings*

In March 2018, Todd Pulis was at his home in Anchorage, when he looked out the window and saw a man he did not recognize inside his vehicle, which was parked in front of his house. Pulis grabbed a gun and went outside to confront the man. By the time Pulis got outside, the man was no longer in Pulis's vehicle and had returned to his own vehicle — a gray truck. Pulis slowly approached the man, eventually standing about two feet away from the truck. The man was rummaging through various papers as Pulis watched.

Pulis initially yelled at the man, but the man did not react. Pulis again yelled, which caused the man in the truck to look up and point a gun at Pulis through the driver's window. Pulis retreated to the backside of the man's truck, took out his own gun, and shot three times into the man's backside right tire. The man then drove away.

Once the man had left, Pulis realized that everything in his vehicle's center console had been stolen. This included Pulis's car manual and registration, banking records, auto repair receipts, and various documents related to Pulis's healthcare.

The same day, Antonio Fullwood received a text from a neighbor telling him that it looked like someone was breaking into his car. Fullwood went outside, and saw someone in the driver's seat of his vehicle. Fullwood yelled at the man, but the man did not react. Fullwood tried opening his car door to remove the man, but the man pointed a gun at Fullwood. Fullwood backed away and yelled to his wife to call the police.

Fullwood saw the man leave Fullwood's car, walk to a nearby carport, and get into a gray truck. The police soon arrived and blocked the truck at the carport. But the man used his truck to push through the police blockade. The police — then on foot — had to move out of the way so that they would not be hit by the truck.

Shortly after the man escaped the officers, the police received a dispatch that someone matching the suspect's description had just been seen at a nearby shopping center. At trial, an employee from one of the stores in the shopping center testified that he saw a "fast moving truck with a blown out right tire" pull into the store's alleyway. The employee testified that a man exited the truck and told the employee that he had "just ditched them," and that "they were trying to get him and then he got away," which the employee assumed referred to the police.

Soon after, the police arrived at the shopping center and located a person matching the suspect's description. Officers pursued the suspect on foot, which led to a chase through one of the stores. The officers followed the suspect through the back exit of the store, where they ultimately apprehended him.

The police identified the apprehended suspect as Christopher Baines. Inside the abandoned gray truck in the shopping center parking lot was paperwork belonging to Pulis and paperwork belonging to Baines. The police discovered that this gray truck had been reported stolen.

In total, five different people — including Pulis and Fullwood — reported that someone had broken into their cars that day in the same general area.

After Baines was arrested, the police took both Pulis and Fullwood to the shopping center to see if they could identify whether Baines was the person who broke into their vehicles.[1] Pulis and Fullwood each engaged in a separate showup in which they positively identified Baines as the person who had broken into their vehicles and pointed a gun at them earlier that day.

The State charged Baines with over twenty counts. Prior to trial, Baines's attorney moved to exclude Pulis's and Fullwood's identifications of Baines. The attorney argued that the identifications were unreliable, namely because they were each conducted as a "showup" — *i.e.*, an identification procedure in which a single suspect is presented to a witness for identification. The attorney further argued that other variables undermined the identifications' reliability, such as the witnesses' high stress levels during their initial interaction with the suspect, the witnesses' relatively short viewing duration, the fact that they were confronted with a gun when they initially saw the suspect, and the fact that the two witnesses were different races than Baines.

After holding an evidentiary hearing, the superior court denied the motion to suppress the identifications. The court found that, although certain variables did undermine the identifications' reliability, there was nonetheless "overwhelming evidence" independent from Pulis's and Fullwood's identifications that Baines was the

---

[1]   At the evidentiary hearing on Baines's motion to suppress, Pulis testified that the showup occurred about forty-five minutes after the break-in at his residence. Fullwood testified that the showup occurred about an hour after the break-in at his residence.

suspect. The court therefore concluded that Baines was "not substantially likely" to have been misidentified.

Following trial, a jury found Baines guilty of nineteen counts: (1) two counts of first-degree robbery (against Pulis and Fullwood); (2) six counts of third-degree assault (two of these counts, involving Pulis and Fullwood, merged with the first-degree robbery counts); (3) first-degree vehicle theft; (4) failure to stop at the direction of a peace officer; (5) two counts of fourth-degree criminal mischief; (6) first-degree criminal trespass; (7) three counts of second-degree criminal trespass; (8) reckless driving; (9) third-degree theft; and (10) fourth-degree theft.[2] After a brief bench trial, the court also found Baines guilty of third-degree misconduct involving weapons (felon in possession of a concealable firearm).[3]

The superior court sentenced Baines to a composite active sentence of 14 years and 4 months, with an additional 15 years suspended, and a 5-year term of probation.

This appeal followed.

---

[2] AS 11.41.500(a)(1), AS 11.41.220(a)(1)(A), AS 11.46.360(a)(1), AS 28.35.182(a)(1), AS 11.46.484(a)(1), AS 11.46.320(a)(1), AS 11.46.330(a)(2), AS 28.35.400, AS 11.46.140(a)(1), and AS 11.46.150, respectively. The jury acquitted Baines of one count of third-degree assault, one count of second-degree theft, one count of second-degree criminal trespass, and one count of fourth-degree criminal mischief.

We note that the judgment in the record improperly reflects that the jury found Baines guilty of this count of fourth-degree criminal mischief. Baines may move to correct the judgment in the superior court, if it remains in error. *See* Alaska R. Crim. P. 36 ("Clerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time and after such notice, if any, as the court orders.").

[3] AS 11.61.200(a)(1).

*Why we conclude that there was sufficient evidence to support Baines's first-degree robbery conviction involving Pulis*

Baines first argues that the State presented insufficient evidence to sustain his first-degree robbery conviction for his conduct relating to Pulis.

To establish Baines's guilt of first-degree robbery in this case, the State was required to prove that: (1) Baines committed second-degree robbery, and (2) in the course of committing that robbery or in immediate flight thereafter, Baines was armed with a deadly weapon, or represented by words or other conduct that he was so armed.[4]

Baines does not contest that the State proved this second element — *i.e.*, that Baines was armed with a deadly weapon (*i.e.*, a firearm). Rather, Baines argues that the State failed to prove that Baines committed second-degree robbery. An individual commits second-degree robbery when, "in the course of taking or attempting to take property" from someone, that person "uses or threatens the immediate use of force" with the intent to "prevent or overcome resistance to the taking of the property or the retention of the property after taking."[5]

In this case, the State charged Baines with first-degree robbery under the theory that Baines brandished his gun with the intent to overcome resistance by Pulis so that Baines could retain the paperwork he had taken from Pulis's car. On appeal, Baines argues that the only property he took from Pulis's car was "worthless" paperwork, and accordingly, the State failed to prove that Baines used his gun to remain in possession of these valueless documents — *i.e.*, to prevent or overcome resistance to the taking of the property. Rather, Baines argues that the evidence showed that he brandished his gun only to escape after Pulis confronted him.

When a defendant challenges the sufficiency of the evidence to support a conviction, this Court must view the evidence, and all reasonable inferences drawn from

---

[4]   AS 11.41.500(a)(1).

[5]   AS 11.41.510(a)(1).

that evidence, in the light most favorable to the jury's verdict.[6] We then ask "whether a fair-minded juror exercising reasonable judgment could conclude that the State had met its burden of proving guilt beyond a reasonable doubt."[7]

As an initial matter, we note that whether there was sufficient evidence to establish that Baines acted with the purpose of "prevent[ing] or overcom[ing] resistance to the . . . retention of the property," as required by the second-degree robbery statute, is a "question of fact for the jury."[8] Here, Baines presented this same argument to the jury — that the papers were valueless and he did not point his gun at Pulis in order to retain them — and the jury obviously rejected it. Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a reasonable juror could do so.

First, a juror could reasonably infer that the documents were not actually "worthless," as Baines contends. Pulis testified that Baines took banking records, his car registration, and files related to Pulis's healthcare — documents that often contain sensitive and potentially valuable information.

Second, there is little evidence to suggest that Baines had enough time to determine whether any of the stolen documents were valueless. Pulis testified that when he first saw Baines in Pulis's car, Pulis ran outside "very fast." Once there, Pulis saw that Baines had returned to his own car, and he watched Baines "rummaging" through the stolen documents. Considering the relatively short time period between when Pulis realized that Baines had broken into his car and when Pulis confronted Baines, a reasonable juror could infer that Baines did not have enough time to look through the documents and discover whether there was anything of value. The fact that the property

---

[6] *Dailey v. State*, 65 P.3d 891, 898 (Alaska App. 2003).

[7] *Id.*

[8] *See Gibson v. State*, 346 P.3d 977, 981 (Alaska App. 2015).

may have ultimately turned out to be worthless does not settle the question of Baines's intent at that time.

Third, Pulis's testimony about Baines's reaction upon being confronted undercuts Baines's argument that he brandished his gun only to escape. Pulis testified that when he first approached Baines, Pulis yelled something at Baines. According to Pulis, Baines "didn't even look up" until Pulis yelled a second time. At that point, Baines brandished his gun — but he did not flee. Pulis retreated to the backside of Baines's truck, at which point Pulis took out his own gun and shot three times into Baines's back right tire. Only then did Baines drive away. The fact that Baines did not flee immediately after being confronted by Pulis supports the jury's conclusion that Baines did not brandish his gun solely to escape from Pulis.

Finally, under Alaska law, when intent is an element of an offense, that intent "need not be the person's only objective[.]"[9] Thus, the jury was not required to find that Baines's *exclusive* purpose when brandishing his gun was to overcome Pulis's resistance.

For these reasons, we conclude that the State presented sufficient evidence to support Baines's first-degree robbery conviction related to Pulis.

*Why the admission of Pulis's and Fullwood's identifications of Baines does not constitute reversible error*

Baines next challenges the out-of-court showup police conducted in which Pulis and Fullwood identified Baines as the person who broke into their cars. Baines contends that the identifications were unreliable under the test that the Alaska Supreme Court adopted in *Young v. State*.[10]

---

[9] AS 11.81.900(a)(1).

[10] *Young v. State*, 374 P.3d 395, 427-28 (Alaska 2016).

In *Young*, the supreme court adopted a new test for evaluating the admissibility of out-of-court eyewitness identifications under the due process clause of the Alaska Constitution. The supreme court directed trial courts assessing the admissibility of an eyewitness identification to evaluate the circumstances surrounding an identification procedure — in particular, a series of variables called "system variables" and "estimator variables."[11] System variables are those factors that are within the control of the officers administering the identification procedure.[12] System variables include, for example, whether the pre-identification instructions were suggestive, whether the identification was blindly administered, and whether the identification was a "showup."[13] Estimator variables are those factors that are outside law enforcement's control.[14] Estimator variables include considerations such as whether the witness was stressed, how long the witness viewed the suspect, and how long after an incident the identification occurred.[15]

If the defendant shows "some evidence" of suggestiveness based on a relevant system variable, the defendant is entitled to a hearing at which the State must present evidence that the identification is nonetheless reliable.[16] The trial court's analysis of reliability must consider "all relevant system and estimator variables under the totality of the circumstances."[17] Ultimately, the defendant has the burden of proving

---

[11]  *Id.* at 417-26.

[12]  *Id.* at 417.

[13]  *Id.* at 417-21.

[14]  *Id.* at 417.

[15]  *Id.* at 422-25.

[16]  *Id.* at 427; *Brigman v. State*, 513 P.3d 1072, 1080 (Alaska App. 2022).

[17]  *Young*, 374 P.3d at 427.

a "very substantial likelihood of irreparable misidentification" in order to suppress the pretrial identification (and any subsequent in-court identification by the witness).[18]

In Baines's case, after holding a hearing, the superior court denied Baines's motion. The court found several estimator variables existed at the time of Pulis's and Fullwood's initial encounter with Baines that tended to undermine their subsequent identifications: Pulis and Fullwood were stressed when initially viewing Baines, they were confronted with a gun, the length of time they had to view Baines was relatively brief, and they were each a different race or ethnicity than Baines. The superior court also considered that the identification procedure was a showup (*i.e.*, Baines was the only suspect presented to the witnesses), which is considered an "inherently suggestive procedure."[19]

Nevertheless, the superior court found that Baines had failed to demonstrate that "there was a very substantial likelihood that either Pulis or Fullwood misidentified him." The court noted that, during the encounters at their homes, both Pulis and Fullwood viewed the suspect from a short distance, and both positively identified Baines around an hour after they first saw him. The court concluded that the

---

[18] *Id.*

[19] *Brigman*, 513 P.3d at 1083. As the supreme court explained in *Young*, Alaska courts have "long restricted the use of showups" for multiple reasons. *Young*, 374 P.3d at 421. First, "in contrast to lineups and photo arrays, which allow a witness with a faulty memory to pick someone other than the suspect, every positive identification in a showup implicates the suspect." Second, showups provide "little protection against witnesses who are inclined to guess[.]" And third, "[r]esearch shows that an innocent suspect who resembles the actual perpetrator is more likely to be incorrectly identified in a showup than in a lineup." *Id.* (citations omitted); *see also id.* at 420 n.143.

The supreme court also noted, however, that showups "can be reliable when they are conducted immediately after a crime, when the witness's memory is freshest," with "research show[ing] that the likelihood of a misidentification increases significantly with showups as little as two hours after the event." *Id.* at 421.

estimator variables that existed did not outweigh the "overwhelming evidence" that Baines was not misidentified, given the independent evidence of his guilt.

On appeal, Baines argues that the superior court erred in relying on extrinsic evidence of Baines's guilt in assessing the reliability of the pretrial identifications.[20] We agree.

Prior to *Young*, Alaska employed the federal test under *Manson v. Brathwaite* for assessing the admissibility of pretrial eyewitness identifications.[21] The federal courts continue to employ this test, which directs trial courts to consider several factors in assessing the reliability (and thus, admissibility) of an unnecessarily suggestive pretrial identification.[22] None of these factors contemplate the consideration of independent evidence of guilt, and *Manson* itself stated that corroborating evidence of the defendant's guilt "play[ed] no part in our analysis."[23] Most federal courts to have

---

[20] Baines also argues in passing that the showup in this case was unnecessary because the police already had probable cause to arrest him based on incidents that occurred at the shopping center itself. He notes that Alaska courts have "long restricted the use of showups as an identification procedure to where it is necessary under the circumstances." *See Young*, 374 P.3d at 421. But regardless of whether there was independent probable cause to arrest Baines, there existed an immediate need for police to identify the person who had just broken into several cars and pointed a gun at multiple people. *See Anderson v. State*, 123 P.3d 1110, 1117 (Alaska App. 2005) (upholding trial court's finding that "the need for quick police [work] outweigh[ed] the inherent suggest[iveness] of … the one-person lineup" where a violent crime had been committed thirty minutes prior to the showup).

[21] *Manson v. Brathwaite*, 432 U.S. 98 (1977); *see also Anderson*, 123 P.3d at 1116.

[22] These factors "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation" and have some overlap with the variables endorsed by the supreme court in *Young*. *Manson*, 432 U.S. at 114; *Young*, 374 P.3d at 417-25.

[23] *Manson*, 432 U.S. at 116; *see id.* at 118 (Stevens, J., concurring) (noting that it is "sometimes difficult to put other evidence of guilt entirely to one side [but the majority] opinion for the Court carefully avoids this pitfall and correctly relies only on appropriate indicia of the reliability of the identification itself").

considered the issue have concluded that unrelated corroborative evidence should not be considered in the context of a reliability assessment.[24] Several state courts have reached the same conclusion.[25] And while some courts have suggested that it might be

[24] *See, e.g.*, *Raheem v. Kelly*, 257 F.3d 122, 140-41 (2d Cir. 2001) (concluding that, even if there was "irrefutable evidence of the defendant's guilt," *Manson* must be read to mandate that courts "confine their consideration of unrelated corroboration of guilt to their assessment of whether the error in admitting identification testimony resulting from unnecessarily suggestive procedures was harmless"); *United States v. Emanuele*, 51 F.3d 1123, 1128 (3d Cir. 1995) ("[O]nly factors relating to the reliability of the identification will be relevant to a due process analysis. Independent evidence of culpability will not cure a tainted identification procedure[.]"); *United States v. Greene*, 704 F.3d 298, 310 (4th Cir. 2013) ("Extrinsic evidence may play a role in plain-error analysis (or, analogously, harmless error analysis), but it cannot be considered in assessing the reliability of [a witness's] identification testimony."); *United States v. Rogers*, 126 F.3d 655, 659 (5th Cir. 1997) (stating that corroborating evidence of defendant's guilt "could not be used in our preceding analysis of whether [a witness's] identification of [the defendant] was reliable because admissibility rests on the reliability of the identification judged solely by the circumstances indicating whether it was likely to be a well-grounded identification, not whether it seems likely to have been correct in light of other available evidence"); *see also Kollie v. Nardelli*, 2021 WL 4148144, at *8 n.9 (D.N.J. Sept. 13, 2021) (unpublished) ("We do not rely on trial evidence of defendant's guilt to corroborate [the] identification. Rather, we rely on trial evidence related directly to the reliability of the identification." (citations omitted)); *United States v. Silva*, 2016 WL 10587962, at *11 (D.N.M. Mar. 4, 2016) (unpublished) (finding that *Raheem* provides "the more persuasive" reasoning compared to the other jurisdictions that permit courts to assess corroborating evidence of guilt in analyzing the reliability of an identification).

[25] *See, e.g.*, *Morales v. United States*, 248 A.3d 161, 180 (D.C. 2021) (recognizing that "[w]hether a particular piece of evidence is reliable is distinct from whether it happens to be accurate" and stating that, while "[c]orroborating evidence might prove the identification to be correct, . . . it tells us nothing about its reliability"); *State v. Jones*, 128 A.3d 1096, 1108 (N.J. 2016) (holding that "extrinsic evidence of guilt plays no role in assessing whether a suggestive eyewitness identification was nonetheless inherently reliable"); *Richards v. People*, 53 V.I. 379, 388 n.4 (2010) (noting that independent evidence of the defendant's guilt is irrelevant for purposes of evaluating eyewitness identification reliability); *Wise v. Commonwealth*, 367 S.E.2d 197, 201 (Va. App. 1988) (same); *Campbell v. State*, 589 P.2d 358, 364 (Wyo. 1979) ("[W]e conclude that the *Manson* Court separates the reliability of the identification from other evidence of guilt.").

appropriate to consider independent corroborating evidence, [26] such a view, according to Professor LaFave, is "inconsistent with *Manson*."[27]

In *Young*, the Alaska Supreme Court adopted a new test for analyzing the admissibility of eyewitness identification evidence — adding additional factors (*i.e.*, system and estimator variables) that are better informed by modern scientific research on the fallibility of eyewitness identifications.[28] But there is no indication that the *Young* court intended to incorporate into the reliability analysis evidence of the defendant's guilt external to the identification.

The supreme court directed that a trial court's analysis of reliability should consider "all relevant system and estimator variables under the totality of the circumstances."[29] The "totality of the circumstances" — a phrase also used in *Manson* — refers to the facts and circumstances related to the variables themselves, *i.e.*, the circumstances germane to assessing the reliability of the identifications.[30] The supreme court did not direct trial courts to evaluate whether there was sufficient independent evidence to *corroborate* the identification, nor did the court indicate that independent evidence of a defendant's guilt was relevant to assessing an identification's reliability. Instead, as Professor LaFave notes, that determination properly comes into play only at

---

[26] *See, e.g.*, *United States v. Constant*, 814 F.3d 570, 577 (1st Cir. 2016); *United States ex rel. Kosik v. Napoli*, 814 F.2d 1151, 1156-57 (7th Cir. 1987); *St. Clair v. Commonwealth*, 140 S.W.3d 510, 551 (Ky. 2004); *Commonwealth v. Hicks*, 460 N.E.2d 1053, 1058 (Mass. App. 1984), *abrogated on other grounds by Commonwealth v. Johnson*, 650 N.E.2d 1257 (Mass. 1995).

[27] 2 Wayne R. LaFave, *Criminal Procedure* § 7.4(c), at 1052 (4th ed. 2015).

[28] *Young v. State*, 374 P.3d 395, 417-25 (Alaska 2016).

[29] *Id.* at 427.

[30] *See id.*; *Manson v. Brathwaite*, 432 U.S. 98, 113 (1977).

the appellate court level in assessing whether the *improper* admission of an eyewitness identification was prejudicial or instead amounted to harmless error.[31]

We therefore conclude that the superior court erred in considering independent evidence of Baines's guilt when assessing the admissibility of the eyewitness identifications.

We note, however, that in ruling on the admissibility of the eyewitness identifications, the court also found that there were some factors that counterbalanced the estimator variables. In particular, during the encounters at their homes, both Pulis and Fullwood viewed the suspect from a short distance, and both positively identified Baines around an hour after they first saw him.

That said, we need not definitively resolve whether the identifications were admissible under a proper application of the *Young* test because we conclude that, after reviewing Baines's trial, any error in admitting the identifications was harmless beyond a reasonable doubt given the overwhelming evidence that Baines was the person who broke into Pulis's and Fullwood's cars.

With respect to Pulis, an employee at the shopping center to which the police responded testified that he saw a truck with a "blown out right tire" pull into the center's alleyway. The man who exited the truck told the employee that he had "just ditched" the police and that the police were looking for him. When the police responded

---

[31] 2 Wayne R. LaFave, *Criminal Procedure* § 7.4(c), at 1052 (4th ed. 2015) ("The correct view is that unrelated corroboration of guilt is to be considered only in determining whether admitting into evidence identification testimony resulting from unnecessarily suggestive procedures constitutes harmless error."); *see also Manson*, 432 U.S. at 118 n.* (Stevens, J., concurring) (noting that independent evidence of the defendant's guilt was properly considered only as to "whether [the] error, if any, in admitting identification testimony was harmless"); *Morales v. United States*, 248 A.3d 161, 181 (D.C. 2021) ("Corroborating evidence has a role to play on appeal, to be sure, but its relevance is limited to whether any error was harmful. It does not inform the suggestivity or reliability calculus and it is thus as irrelevant to the trial court's admissibility determination as it is to our assessment of whether an error occurred.").

to the shopping center, they discovered a bullet hole in the back right tire of the truck from which the man had fled — the exact place that Pulis shot earlier. In the truck, an officer found Pulis's paperwork, together with paperwork belonging to Baines.

With respect to Fullwood, Fullwood testified that he saw a man exit his (Fullwood's) car and walk to the carport adjacent to Fullwood's house. After the police arrived, Fullwood saw the man — now in his own truck — ram into the police blockade. One of the officers who responded testified that this truck was the same vehicle that the police later located at the shopping center — with a blown back tire and paperwork from Pulis's vehicle. The officer also found a bank slip with Pulis's name on it under the location where the truck had been parked in the carport. At trial, the officer identified the suspect in the truck as the same man who was ultimately arrested behind the shopping center.

Accordingly, even without Pulis's and Fullwood's identifications, substantial and conclusive independent evidence established Baines as the person who broke into their cars. Thus, any error in declining to suppress the identifications was harmless beyond a reasonable doubt.[32]

*Why we reject Baines's sentencing claims*

Lastly, Baines argues that the superior court should have run a greater portion of his individual sentences concurrently.

At the time of sentencing, Baines was thirty-one years old. He had multiple prior convictions, including three prior assault convictions (one of them a felony conviction for third-degree assault with a firearm). As a second felony offender,

---

[32] *See Young*, 374 P.3d at 409 ("The admission of an unreliable eyewitness identification at trial is harmless 'if there [is] conclusive independent evidence, apart from the [unreliable] identification testimony[,] . . . that identified [the defendant] as the [culprit].'" (quoting *McCracken v. State*, 521 P.2d 499, 504-05 (Alaska 1974) (alterations in original))).

Baines faced a presumptive sentencing range of 8 to 12 years for each of his two convictions for first-degree robbery.[33] He faced a presumptive sentencing range of 1 to 4 years for each third-degree assault conviction and the other class C felonies (first-degree vehicle theft, first-degree failure to stop, and third-degree misconduct involving weapons).[34] Baines's remaining convictions were misdemeanors.

The court imposed 12 years with 4 years suspended (8 years to serve) on each robbery conviction, running 4 active years on the second count concurrently (for a total of 12 years to serve between the two convictions). For each of the class C felonies — the four third-degree assault convictions, the first-degree vehicle theft conviction, the first-degree failure to stop conviction, and the third-degree misconduct involving weapons conviction — the court imposed a sentence of 2 years with 1 year suspended, running 8 months of each sentence concurrently with the sentence on the first robbery conviction (for a total of 2 years and 4 months to serve among these convictions). The court ran the sentences on the remaining nine misdemeanor counts entirely concurrently.

Accordingly, Baines received a composite sentence of 29 years and 4 months with 15 years suspended (14 years and 4 months to serve).

On appeal, Baines argues that the court should have run a greater portion of the sentences concurrently.[35] Baines notes that there was overlap between the proof required for some of the offenses (for example, he notes that his possession of a gun was a "component" of both the first-degree robbery convictions and his felon-in-

---

[33]  Former AS 12.55.125(c)(3) (2018).

[34]  Former AS 12.55.125(e)(2) (2018).

[35]  Specifically, Baines argues that the court should have run a greater portion of the sentence on his felon-in-possession conviction concurrently with the sentences on the robbery convictions, a greater portion of the sentences on his two robbery convictions concurrently, and a greater portion of his sentences on his assault and failure to stop convictions concurrently.

possession conviction) and that many of his offenses occurred within a short period of time on the same day.[36] But the decision about whether and how much time to run concurrently is largely within the discretion of the sentencing court.[37] Here, the court did not impose any of the individual sentences fully consecutively, and in fact ran a fair portion of the time concurrently.[38] Indeed, the court ran the sentences on nine of Baines's convictions entirely concurrently.

Moreover, when we review a composite sentence imposed for two or more crimes, we do not address each individual sentence in isolation. Rather, we address whether the composite sentence as a whole is clearly mistaken, given the entirety of the defendant's conduct and history.[39] Baines does not directly argue that his overall composite sentence is excessive.

Nonetheless, having independently reviewed the record, we conclude that Baines's composite sentence is not excessive. When we review an excessive sentence

---

[36] *See State v. Andrews*, 707 P.2d 900, 910 (Alaska App. 1985) (recognizing the principle of "incremental sentencing" — that a gradual increase in penalties is appropriate for each additional crime in a series of crimes committed closely in time).

[37] *Neal v. State*, 628 P.2d 19, 20 (Alaska 1981); *Wells v. State*, 706 P.2d 711, 712 (Alaska App. 1985). We note that the court was required to impose at least one consecutive day of imprisonment for each additional AS 11.41 crime for which Baines was convicted — *i.e.*, his second robbery conviction and each of his third-degree assault convictions. *See* AS 12.55.127(c)(2)(F).

[38] *See, e.g.*, *Wortham v. State*, 689 P.2d 1133, 1144 (Alaska App. 1984) (affirming sentence for felon-in-possession that ran consecutively with first-degree assault, even though a firearm was an integral element to the assault charge); *Grantham v. State*, 1987 WL 1357147, at *1 (Alaska App. May 27, 1987) (unpublished) (affirming consecutive sentences for second-degree theft — *i.e.*, theft of a firearm — and for felon-in- possession). *Cf. Graf v. State*, 2022 WL 950927, at *5 (Alaska App. Mar. 30, 2022) (unpublished) (recognizing that assault and first-degree failure to stop — eluding the police while driving recklessly — serve separate societal interests).

[39] *See Brown v. State*, 12 P.3d 201, 210 (Alaska App. 2000); *Comegys v. State*, 747 P.2d 554, 558-59 (Alaska App. 1987).

claim, we independently examine the record to determine whether the sentence is clearly mistaken.[40] This "clearly mistaken" standard contemplates that different judges, confronted with identical facts, will differ on what constitutes an appropriate sentence and that society is willing to accept these sentencing disparities so long as the sentencing decision falls within a permissible range of reasonable sentences.[41] We conclude that this standard has been met here, and we reject Baines's sentencing claims.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

[40] *McClain v. State*, 519 P.2d 811, 814 (Alaska 1974).

[41] *Erickson v. State*, 950 P.2d 580, 586 (Alaska App. 1997).